UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:18-CV-451-REW

DUSTIN JAMES SPARKS,                                              PETITIONER,

V.                          **RECOMMENDED DISPOSITION**

CORBETT DUNAWAY, JAILER,                                    RESPONDENT.

The Petitioner, Dustin James Sparks, was convicted of murder after a two-day trial in Estill Circuit Court and sentenced to thirty-five (35) years in prison. His conviction was affirmed on appeal before the Kentucky Supreme Court. He brings this action seeking relief, arguing that his conviction was the product of error since his constitutional rights guaranteed under the Fifth and Sixth Amendments were violated during his trial. However, having reviewed the matter under the guidance of controlling law, the undersigned will recommend that his petition be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Title 28, United States Code § 2254(e)(1) provides that a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989). In this case, the facts as summarized in the Kentucky Supreme Court's opinion are not in dispute and are therefore entitled to a presumption of correctness. Those facts are as follows:

> On December 4, 2015, Sparks attended a party at the home of Dontarius and Felicia Pittman. Felicia Pittman and Sparks are first cousins. Other individuals at the party

1

included Derrick and Jackie Marshall, Tyler Williams, Dakota Hall, and Benjamin Brewer, the victim. The party took place in the Pittmans' garage where the guests played pool, listened to music, and played the drinking game, beer pong. There was excessive drinking and the smoking of marijuana.

Sparks brought an army knife/bottle opener to the party. Sparks's girlfriend had given him the knife earlier that day, and Sparks was showing it off at the party. Sparks offered the knife/bottle opener to Jackie Marshall so she could open a beer.

At some point during the party, Sparks began nudging Benjamin Brewer in the back with the butt of his knife. Brewer turned around and swung at Sparks. Sparks responded by swinging his knife at Brewer, hitting him in the neck, severing his jugular vein and carotid artery. Some of the individuals, including Sparks, tried to stop the bleeding and perform CPR on Brewer while someone else called 911. Brewer had died by the time the ambulance and police arrived.

While outside of the Pittman home, Detective Tye Chavies took photographs of Sparks who was covered in Brewer's blood. Kentucky State Police Detective Jesse Armstrong interviewed the other individuals at the party, examined the crime scene, and arrested Sparks and interviewed him about the incident.

Sparks was tried before an Estill County jury on February 27 and February 28, 2017. Sparks maintained that he was acting in self-defense, and the trial judge instructed the jury on the law of self-protection. The jury found Sparks guilty of murder and the judge entered judgment sentencing Sparks to 35 years' imprisonment.

[R. 1, Ex. 3].

## STANDARD

Before undertaking a review of Sparks' claims in this action, the undersigned must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If his claims have not previously been presented to the state court for adjudication, then they are unexhausted and may not properly serve as the basis of the present federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). This exhaustion requirement is satisfied if the highest court in the state in which Sparks was convicted has been given a full and fair opportunity to rule on the his claims before he seeks relief in federal court.

*Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). This requires that both the factual and the legal basis for the claims must have been presented to the state courts in order to be considered "fairly presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).  In addition, the petitioner bears the burden of proving that he has exhausted those remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Where a petitioner cites to constitutional provisions, he has fairly presented the claims even if he relies on the wrong cases. *Fulcher*, 444 F.3d at 798. In this case, it is undisputed that Sparks presented his claims under the Fifth and Sixth Amendments to the United States Constitution to Kentucky's highest court by taking a direct appeal of his conviction to the Kentucky Supreme Court as a matter of right. Ky. Const. § 110(2)(b). As a result, his claims are now fully exhausted. *See* RCr 12.05.

Having determined that Sparks' remedies before the State of Kentucky have been fully exhausted, the undersigned will consider the law governing review of his claims in federal court. This Court is required to review Sparks' request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994). The AEDPA "prevents federal habeas 'retrials' " and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Thus, federal courts must review state court adjudications on the merits of such claims using a "highly deferential" standard of review. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under this deferential standard, the Court is bound to accept the state court's findings of fact as true unless a petitioner presents "clear and convincing evidence" to the contrary. *See* 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue by a state

3

court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *see also Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.' " *Woods*, 135 S.Ct. at 1376 (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 39 (2011); *see Lockyer v. Andrade*, 538 U.S. 63, 71-72

(2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Kentucky state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The standards set forth in the AEDPA's are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the

state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## ANALYSIS

In this action, Sparks presents two claims of error which he argues entitle him to relief, both of which were addressed by the highest court in Kentucky.  The claims relate to a recorded interview he gave to Detective Jesse Armstrong shortly after stabbing the victim in this case. In his first claim, Sparks argues that his Fifth Amendment Right against self-incrimination was violated when the Court denied suppression of statements he made to Detective Armstrong during the recorded interview on the night of the stabbing. Second, he asserts that his Sixth Amendment right to confront the witnesses against him was violated when the trial court denied him the opportunity to fully cross-examine Detective Armstrong regarding statements the Detective made during the recorded interview. As explained below, these claims fail because the Kentucky Supreme Court's rulings denying him relief are neither contrary to, nor an unreasonable application, of clearly established federal law.

## FIFTH AMENDMENT

The basis for Sparks' claim under the Fifth Amendment was fully considered by the Kentucky Supreme Court, which ruled that the trial court did not err in refusing to suppress Sparks' statements to Detective Armstrong.  So, the question now to be considered is this:  Was the ruling of the Kentucky Supreme Court contrary to or an unreasonable application of clearly established federal law?  The answer is no.

Sparks' interview with Detective Armstrong was played before the jury at trial. Sparks, however, maintained that he repeatedly invoked his right to remain silent during the recorded interview, and statements he made to Detective Armstrong should have been suppressed. [R. 7].

6

In considering his arguments, the trial judge found that the alleged invocation of his right to remain silent did not clearly demonstrate his intention to remain silent as he continued to both answer the Detective's questions and volunteer information during the interview.  In considering the issue on appeal, the Kentucky Supreme Court found no error in the trial court's ruling and affirmed the conviction. In doing so, the Kentucky Supreme Court considered the following:

> The beginning of the recording shows that Sparks submitted to the interview voluntarily.  In fact, Sparks begins to make his statement and Detective Armstrong asks him to wait until after he has read him his rights.
>
> **Sparks**: I told them…
>
> **Armstrong**: Before you go too far… let me…
>
> **Sparks:** I understand my rights.
>
> **Armstrong**:  Well let me tell you, tell you what they are just to make sure.
>
> **Sparks**: Okay
>
> **Armstrong**: You've heard them before, I guess.
>
> **Sparks**:  I've got the right to remain silent, anything can and will be used against me in a court of law.
>
> **Armstrong**: So you, so you've got the right to remain silent. Anything you say can and will be used against you in a court of law.  You have the right to an attorney. You have the right to have that attorney present during any questioning. If you can't afford an attorney, one will be appointed to you by the Court.  You have the right to not answer any questions or make any statements if you want to do that. You understand those rights?
>
> **Sparks**:  Yes, sir.

[R. 1-3, p . 4-5].

There is no argument in this case that Sparks was properly advised of his Fifth Amendment right to remain silent and to refuse to answer any of Detective Armstrong's questions.  Having found that Sparks was properly advised of his right to remain silent, the Kentucky Supreme Court proceeded to analyze portions of Sparks' recorded statement and determine whether he clearly invoked his right to remain silent, analyzing similar alleged errors together.  The question is simply

whether, at any later point, he invoked his right to remain silent, requiring all questioning by the Detective to end.

Statement 1:

> **Sparks**: If I had a bottle in my hand and punched him and he told you I hit him with a bottle?

> **Armstrong**: So, instead, it was better to slice his throat?

> **Sparks**: No, I didn't mean slice his throat, man.  I just fucking. I just took my shit. I was fucking defending myself, that's all **I'm gonna say** [inaudible].

The emphasized portion of the above statement, "I'm gonna say," is actually inaudible on the trial recording.  The Commonwealth's brief agrees that the statement is inaudible and gives a possible interpretation as Sparks saying, "That's all I done."  In listening to the recording multiple times, we believe the Commonwealth's interpretation is closer to what Sparks actually said. Nonetheless, the Court can clearly say that Spark's inaudible mumbling was not an invocation of his right to remain silent.

Statement 5:

> **Armstrong**:  All the fights you've been in, the only reason you didn't stab [inaudible] is because you didn't have a knife?

> **Sparks**:  Yes, sir.

> **Armstrong**:  Well it's a wonder you ain't been in prison for a while.

> **Sparks**: [Inaudible] fucking talking to you.  I'm not gonna sit here and talk to you. I'm trying to be civil about the situation, dude.

> **Armstrong**: What's civil about cutting somebody's throat wide open?

Statement 5 is similar to Statement 1 in that Sparks claims he said, "I'm not gonna sit here and talk to you," while the beginning of this sentence is actually inaudible on the recording. As stated above, this cannot be an unequivocal invocation of Sparks's right to remain silent.

We analyze Statements 2 through 4 together.

Statement 2:

> **Armstrong**:  Cause he wasn't, he didn't have his hands around your neck.

> **Sparks**:  How, I . . . it could have happened, just . . .

> Armstrong:  But it  didn't.

8

**Sparks**: I

**Armstrong:** Did he.

**Sparks:** I'm not gonna say another fucking word, man. This is bullshit. [Inaudible.]

**Armstrong**: Well, I'm just asking you, did he or did he not choke you?

Statement 3:

**Armstrong**: Here's what I'm asking you . . .

**Sparks**: I mean when are ya'll gonna stop man?

**Armstrong**: Can I ask you a question?

**Sparks**: Yes, sir.

Statement 4:

**Sparks**: I am fucking scared of somebody that's fucking [inaudible]. It didn't happen any fucking time. . .

**Armstrong**: He never even presented a threat to you at all.

**Sparks**: Nah, I used to know Ben.

**Armstrong**: Right.

**Sparks**:  If somebody's walking up and just starts fucking . . .fucking throwing punches and hitting me, man, shit yeah, I'm fucking going to defend myself. That's all I've got to say. I'm defending myself.

**Armstrong**: Okay. So, I guess we're just on different sides in the way we interpret defending ourselves.

Sparks argues that the above conversations show he invoked his right to remain silent. The Count is not convinced.  After Sparks says, "I'm not gonna say another fucking word, man," he goes right into saying, "this is bullshit." Then, the recording indicates Sparks continues to talk, and although it is inaudible, before Armstrong asks his next question.

Sparks was explaining that he was "scared" and "defending himself" when the above exchange took place.  The commonwealth argues that Sparks's statement he wasn't "gonna say another fucking word" is not an assertion of the right to remain silent but simply that Sparks was not going to say anything else about why he was defending himself.

[R. 1-3, pp. 5-7].

9

Finding that the trial court committed no error in refusing to suppress Sparks' statements to Detective Armstrong, the Kentucky Supreme Court recited the standard of review as follows: "In order to invoke the right to remain silent, a suspect must clearly articulate his desire in a manner that a reasonable police officer in the situation would understand that the suspect wished for the questioning to cease. *Meskimen v. Commonwealth*, 435 S.W.3d 526, 531 (Ky. 2013)." [R. 1-3, p. 8]. Likewise, the Kentucky Supreme Court stated**,** "A suspect may waive his Miranda rights either expressly or implicitly. When a suspect has been advised of his rights, acknowledges an understanding of those rights, and voluntarily responds to police questioning, he may be deemed to have waived those rights." [R. 1-3, p. 8]. This court takes notice of the fact that these basic premises recited by the Kentucky Supreme Court are in harmony with the standards set out in *Davis v. United States,* 512 U.S. 452, 459 (1994), and *North Carolina v. Butler,* 441 U.S. 369, 375–76 (1979)**.** Finally, the Kentucky Supreme Court correctly stated that "[t]he basic governing legal rule is that a court, in considering whether a defendant has voluntarily relinquished his Fifth Amendment rights, must examine the 'totality of circumstances surrounding the interrogation'." *United States v. Ferrer-Cruz*, 899 F.2d 135, 141 (1st Cir. 1990) (quoting *Fare v. Michael C.,* 442 U.S. 707, 725 (1979)).

Relying on this authority as applied to the facts of the case, the Kentucky Supreme Court found that Sparks continued to speak voluntarily, before Detective Armstrong responded with an additional question. Sparks had previously confirmed that he understood his rights, but voluntarily answered the Detective's questions. Sparks' comment in Statement 3 "I mean when are ya'll gonna stop, man?", the Supreme Court ruled cannot be an invocation of the right to remain silent. A defendant may simply tell the police he does not want to talk to them: "I ain't saying nothing," and

"I don't have anything to say," have all been sufficient to invoke the right to remain silent. *See Buster v. Commonwealth*, 364 S.W.3d 157, 163 (Ky. 2012).

> Statement 6:
>
> **Armstrong**: How long were you out when you blacked out?
>
> **Sparks**: I'm not talking to you.  I know how you all work.
>
> **Armstrong**: Like a minute or two minutes?

Finally, regarding statement 6, the Kentucky Supreme Court stated:

> Like the analysis above, in Statement 6 Sparks states "I'm not talking to you," but continues to speak before Detective Armstrong responds.  This statement, however, is the closest thing to an invocation of the right to remain silent that Sparks asserts in the entire interview.  Had Sparks ceased speaking after he states, "I'm not talking to you," we would undoubtedly find this to be sufficient to invoke his right to remain silent. But that is not the case before us.
>
> Even if we found this to be a clear invocation of the right to remain silent, and the admission of the interrogation to be in error, any such error is harmless.  Sparks argues that the entire interrogation should have been suppressed, however, only statements taken after a person invokes his privilege can be suppressed. See *Buster*, 364 S.W.3d at 163 (citing *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966)).
>
> At trial, Sparks's interrogation began playing for the jury, and Statement 6 does not occur for more than 30 minutes.  After Statement 6, Sparks continues to talk with Detective Armstrong.  He maintains that he was acting in self-defense. The majority of the remainder of the recording indicates only the sound of Detective Armstrong typing, with minimal comment by Sparks, and the taking of statistical data by Detective Armstrong.  The only information subsequent to this point is either cumulative to Sparks's previous testimony or is not prejudicial to Sparks.
>
> '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' *St. Clair v. Commonwealth*, 451 S.W.3d 597, 632 (Ky. 2014) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). This requires "prov[ing] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. At 633 (internal citations omitted). "And, '[t]he States bears the burden of proving that an error passes muster under this standard*." Id*. (citing *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993)0.
>
> We find the admission of anything beyond this point harmless beyond a reasonable doubt. By the time of the making of Statement 6, Sparks had already admitted to stabbing Brewer and adamantly claimed he was acting in self-defense. He had already stated that he would do anything he had to do to defend himself.

11

The Court cannot say the admission of the remainder of the interrogation contributed to the verdict. As such, we find no error in the trial court refusing to suppress the interrogation video.

[R. 1-3, pp. 10-11].

Reviewing the rulings made by the Kentucky Supreme Court, the undersigned is aware that there is no "ritualistic formula or talismanic phrase [that] is essential in order to invoke the privilege against self-incrimination." *Emspak v. United States*, 349 U.S. 190, 194 (1955). If, during custodial interrogation, a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona,* 384 U.S. 436, 473–74 (1966). "Through the exercise of his option to terminate questioning [a suspect] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. . . [t]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley,* 423 U.S. 96, 103–04 (1975). However, law enforcement officers are not required to terminate an interrogation unless the invocation of the right to remain silent is unambiguous. *Davis v. United States,* 512 U.S. 452, 461-62 (1994). "[A]n accused's *post request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois,* 469 U.S. 91, 100 (1984) (emphasis in original). The Supreme Court has suggested, however, that "an accused's request ... may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself." *Id.*

The determination of whether Sparks' right to cut off questioning was scrupulously honored requires a case-by-case analysis. *Christopher v. Florida,* 824 F.2d 836, 840 (11th Cir. 1987). The inquiry as to whether Sparks' alleged invocation of his right to remain silent was ambiguous or equivocal is an objective one. *Davis,* 512 U.S. at 458-59. Thus, Sparks was required to articulate his desire to cut off questioning with sufficient clarity so that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir. 1994), *cert. denied,* 514 U.S. 1086 (1995). *See also Davis,* 512 U.S. at 459.   However, in this case, the Kentucky Supreme Court properly relied on and applied clearly established federal precedent as set forth in the opinions of the United States Supreme Court. The state court's rulings that Sparks' statements during the interview were not sufficiently demonstrative of his intention to remain silent are without error. When considered in light of the standard set forth above, the fact that Sparks both continued to answer questions and volunteer information during the interview does not demonstrate that the state court's rulings were contrary to or an unreasonable application of controlling federal law.

This Court is bound to accept the state court's findings of fact as true since petitioner has failed to present "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, here, AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Consequently, Sparks' first claim provides him with no relief.

## SIXTH AMENDMENT

The basis for Sparks' claim under the Sixth Amendment was fully considered by the Kentucky Supreme Court.  That court ruled that the trial court committed no error in limiting

Sparks' cross-examination of Detective Armstrong regarding his misstatements of the law of self-defense in Kentucky during the recorded interview with Sparks. So, the question now to be considered is this: Was the ruling of the Kentucky Supreme Court contrary to or an unreasonable application of clearly established federal law? The answer, again, is no.

In this action, Sparks asserts that the taped interview with Detective Armstrong included misstatements made by Armstrong regarding the law of self-defense in Kentucky. Specifically, Armstrong said, "you don't have the right to stab someone because they punch you, the law is very clear on that" and "you understand to kill someone your life has to be in danger." [R. 1-2, p. 21]. Sparks' attorney attempted to cross-examine Armstrong by asking:

> "You heard me tell the jury that the law of self-defense is basically that you have the right to use deadly force against someone intending to kill you, or someone who may cause you serious bodily injury. Now when you questioned Mr. Sparks on the tape you weren't exactly accurate in trying to explain you're your version of the law were you?" The judge then stated, "That'll be a question of law for the court. I don't want you to tell the jury what the law of self-defense is. You can argue what self-defense is but as far as giving them enough to making it self-defense you can't, sounds like that's what you're up to." The trial judge then offered to admonish the jury to not consider Detective Armstrong's summary of the law of self-defense, and Sparks's counsel agreed. The trial judge admonished the jury to disregard any statements made by Detective Armstrong to Sparks regarding the Kentucky law of self-protection.

[R. 1-3, p 12].

Sparks contends that, at trial, he stated on the record, "I just want to challenge to what he said on the tape [...] that he didn't [..] represent the law." [R. 1-1, p. 21]. To this statement, the Court stated, "Again, that's my job so I'm not going to let you do that." [R. 1-1, p. 22].

Sparks contends that the Court's refusal to allow him to cross-examine Armstrong was prejudicial to his defense and likely conveyed the message to the jury that the Judge believed it was appropriate for the officer to state the definition of self-defense in an inaccurate way during a crucial moment of the trial. In reviewing this ruling, the Kentucky Supreme Court stated:

Sparks cites to two statements by Detective Armstrong regarding the law of self-protection. The trial judge admonished the jury, and "the jury is presumed to follow the admonition," *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citing *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky. 1999)). "There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant or (2) when the question was asked without a factual basis *and* was 'inflammatory' or 'highly prejudicial'." *Id.* (Internal citations omitted)(emphasis in original). Neither exception applies in this case. The two statements are innocuous within the 56-minute interrogation played for the jury.  We find no abuse of discretion, and therefore, we find no error.

[R. 1-3, p. 13].

In reaching this conclusion, the Kentucky Supreme Court incorporated the analysis applied in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), where the United States Supreme Court "made clear that the trial court enjoys discretion to limit cross-examination of an adverse witness, even when the limitation is placed on evidence of bias: the Sixth Amendment 'does not prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.'" *Davenport*, 177 S.W.3d at 768 (citing *Van Arsdall*, 475 U.S. at 679).

Any error in this case would only be reversible if the facts clearly supported an inference that the witness was biased, and that the potential bias exceeded mere speculation.  For instance, in *Van Arsdall*, the Confrontation Clause violation occurred when the trial court excluded evidence that a key prosecution witness's criminal charge had been dismissed after he agreed to talk with investigators about the murder, an agreement which the witness readily acknowledged. *Van Arsdall*, 475 U.S. at 676. In the present case, the only evidence of bias argued by the Petitioner is that Detective Armstrong incorrectly stated the law of self-protection during the recorded interview with Sparks. Therefore, it cannot be said that the facts clearly support an inference that Armstrong was biased, and that the potential bias exceeded mere speculation. It seems undisputed

that Armstrong made an incorrect statement of the law of self-protection when interviewing Sparks, however, it remains unclear how further cross-examination of him on this issue would have revealed a motive or intention to testify in a manner harmful to Sparks.

The Kentucky Supreme Court properly relied on and applied clearly established federal precedent as set forth in the opinions of the United States Supreme Court to rule that Sparks' right to confront the witness against him as guaranteed by the Sixth Amendment was not violated. The Court found no evidence of bias and correctly instructed the jury on the law of self-protection in Kentucky, with the consent and agreement of counsel. It cannot be said that the facts clearly support an inference that Armstrong was biased, and that the potential bias exceeded mere speculation. This Court is bound to accept the state court's findings of fact as true since petitioner has failed to present present "clear and convincing evidence" to the contrary. *See* 28 U.S.C. § 2254(e)(1). Therefore, in this case, AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Consequently, Sparks' second claim also provides him with no relief.

<u>**CONCLUSION**</u>

For the reasons set forth above, it is **RECOMMENDED** that Sparks' Motion to Vacate [R. 1] be **DENIED**.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Particularized objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004);

*Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 72(b).

This the 5th day of February, 2019.



Signed By:

*Edward B. Atkins*  *EBA*

**United States Magistrate Judge**