UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DUSTIN SPARKS, | ) | |
| | ) | |
| Petitioner, | ) | No. 5:18-CV-451-REW-EBA |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| CORBETT DUNAWAY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Judge Atkins's Report & Recommendation (R&R), which advises denial of Dustin Sparks's 28 U.S.C. § 2254 petition. DE #1 (Petition); DE #9 (R&R). The case involves two issues, broadly, and Petitioner has objected to the R&R's resolution of each in the Commonwealth's favor. DE #10. The Court, on *de novo* review, agrees with Judge Atkins's conclusions per the analyses here outlined and, accordingly, overrules Sparks's objections and denies the petition for a writ of habeas corpus under § 2254.

**1. Factual and Procedural Background**

As Judge Atkins noted, Petitioner does not challenge the facts presented at trial and adopted in the Kentucky Supreme Court's affirmance.[1] *See* 28 U.S.C. § 2254(e)(1) (providing that a state

---

[1] As Sparks's petition challenges only Kentucky's application of federal law to the facts of this case, and does not dispute accuracy or adequacy of the facts considered, an evidentiary hearing is not warranted under Rule 8 of the *Rules Governing Section 2254 Cases* or § 2254(e)(2). *See, e.g.*, *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."); *id.* (noting that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing[]"). There are no factual challenges requiring resolution, and surely none that call for evidence outside the state record. Sparks does not advocate for an evidentiary hearing.

court's factual determinations "shall be presumed to be correct[]" and that a habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence[]"); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). The Court briefly summarizes the relevant facts and case progression as recited by the courts of the Commonwealth.

On December 4, 2015, Sparks attended a small party at his cousin's Booneville home. DE #1-3 (Kentucky Supreme Court Opinion) at 1. The gathering of eight people, congregating primarily in the hosts' garage, featured substantial drinking and marijuana smoking. *Id.* at 2. Sparks brought a combination knife/bottle opener, which he had received from his girlfriend, to the party and showed it to guests; one guest used it to open her beer. *Id.* At some point during the evening, Sparks began nudging another guest—Benjamin Brewer, the victim—in the back with the butt of the knife. *Id.* Brewer turned and swung a punch at Sparks, who responded by swinging his knife at Brewer. *Id.* Sparks lacerated Brewer's jugular vein and carotid artery, ultimately killing him, despite partygoers' (including Sparks's) efforts at resuscitation. *Id.* Brewer died by the time emergency services arrived. *Id.*

Kentucky State Police Detective Jesse Armstrong interviewed Sparks on the scene, *id.*, and Sparks admitted his role in the altercation, but maintained that he acted in self-defense, *id.* at 2–3. Petitioner was indicted for Brewer's murder, and a jury in Estill County, Kentucky (per an agreed venue change) tried Sparks over two days in February 2017. *Id.* The prosecution played the 56-minute Armstrong interview in full at Sparks's trial. *Id.* at 3, 13. The jury—ultimately rejecting Sparks's self-protection defense—convicted him of murder, and the trial court sentenced Petitioner to 35 years' imprisonment on the jury's recommendation. *Id.* at 3.

On direct appeal to the Kentucky Supreme Court, Sparks asserted two arguments, claiming (1) that the trial court violated his Fifth Amendment right against self-incrimination when it

admitted the Armstrong interview into evidence, because Armstrong had ignored Sparks's invocations of the right to silence during questioning; and (2) that the trial court violated Sparks's Sixth Amendment right to confront witnesses when it curtailed defense counsel's cross-examination of Armstrong concerning misstatements of Kentucky self-protection law the detective made during the interview. *See* DE #6-2 at 21–45. The Kentucky Supreme Court rejected these arguments and unanimously affirmed Sparks's conviction and sentence. DE #1-3.

Sparks subsequently filed the instant § 2254 petition, raising the same arguments presented to the Kentucky Supreme Court.[2] DE #1. The Court screened the petition and directed briefing on Sparks's claims. DE #3. The Commonwealth opposed the petition, DE #6, and Sparks (though permitted) did not reply. Judge Atkins found that neither of Sparks's arguments merits relief and recommended denial of the petition. *See* DE #9. Sparks timely objected. *See* DE #10.[3]

## 2. Legal Framework

The Court must review *de novo* those portions of the R&R to which Sparks specifically objects. *See* 28 U.S.C. § 636(b)(1)(C) (requiring "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made[]"); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). However, the Court need not conduct "review of a magistrate[] [judge's] factual or legal conclusions, under a *de novo* or any other standard, when

---

[2] Judge Atkins found the primary Fifth and Sixth Amendment arguments properly exhausted for habeas review purposes. DE #9 at 2–3; *see* 28 U.S.C. § 2254(b)(1); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts. A claim may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claim in state court."). No party objects to this finding.
[3] The Commonwealth filed no objections to the R&R.

neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). The Court

tailors its analysis accordingly.

Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), federal courts may grant the sought writ only if a state court's merits adjudication of

the petitioner's claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);[4] *accord Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Notably, AEDPA

established a "'highly deferential standard for evaluating state-court rulings,' which demands that

---

[4] There is some lack of clarity concerning the interplay between §§ 2254(d)(2) and 2254(e)(1). Each distinctly assures a measure of deference to state court factual determinations. Although the Supreme Court declined to guide the interaction in *Wood v. Allen*, 130 S. Ct. 841, 845 (2010), the Sixth Circuit has said,

> With respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court-proceeding[.]"

*Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003)); *accord Bays v. Warden*, No. 18-3101, 2020 WL 1514841, at *3 (6th Cir. Mar. 30, 2020) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (first quoting 28 U.S.C. § 2254(d)(2), then quoting *id.* § 2254(e)(1))) ("A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record."); *see also McMullan v. Booker*, 761 F.3d 662, 670 & 670 n.3 (6th Cir. 2014); *Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016); *Rice v. White*, 660 F.3d 242, 254 n.6 (6th Cir. 2011). The Sixth Circuit has consistently acknowledged that "the Supreme Court has yet to clarify the relationship between § 2254(e)(1) . . . and § 2254(d)(2)." *Carter v. Bogan*, 900 F.3d 754, 768 n.5 (6th Cir. 2018), *cert. denied sub nom. Carter v. Jackson-Mitchell*, 140 S. Ct. 56 (2019) (citation omitted); *see also Allen v. Mitchell*, No. 02-4145, 2020 WL 1429212, at *9 (6th Cir. Mar. 24, 2020) ("The Supreme Court has not yet decided what the relationship is between subsections (d)(2) and (e)(1)."); *Hawkins v. Woods*, 651 F. App'x

state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (*per curiam*)). The AEDPA standard is, by design, "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). The Supreme Court has repeatedly cautioned courts about the rarity of a warranted writ under § 2254. *See, e.g., Jenkins v. Hutton*, 137 S. Ct. 1769, 1773 (2017) (per curiam). A petitioner typically bears the heavy burden of justifying habeas relief. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).

Sparks proceeds under the first prong, arguing that the Kentucky Supreme Court misapplied federal law in deciding (1) that admission of the taped interview did not violate his Fifth Amendment right to silence and (2) that the trial court did not abridge his Sixth Amendment right to cross-examine Detective Armstrong. "Under the 'contrary to' clause [of the first prong], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.'" *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000). In this regard, "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court. It also clearly includes legal principles enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002). At the same time, habeas review focuses on the holdings of the Supreme Court, not its *dicta* or holdings of the courts of appeals.

---

305, 309 n.2 (6th Cir. 2016) (observing that "the interplay between § 2254(e)(1) and § 2254(d)(2) remains unresolved[]"); *Rice*, 660 F.3d at 254 n.6 (eschewing the opportunity to clarify "the precise interplay between § 2254(d)(2) and (e)(1)"). The (d)(2) overlay is "demanding but not insatiable." *Ayers*, 623 F.3d at 308 (quotation omitted); *see also Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (describing (e)(1) as a "supplement[ ]" to (d)(2), providing an "'arguably more deferential' standard of review for state court findings of fact") (citation omitted).

*Williams*, 120 S. Ct. at 1523 (regarding *dicta*); *id.* at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996)) (regarding reliance on intermediate appellate authority). Further, federal habeas relief generally is unavailable for state-law application errors, unless such errors resulted in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479–80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[.]"); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

As to the "unreasonable application" clause, the Supreme Court has held that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523. The writ may not issue solely because the state court incorrectly applied the relevant Supreme Court precedent; the state court's misapplication must have been objectively unreasonable. *Id.* at 1521–23. In determining whether the state court misapplied Supreme Court precedent, a federal court may look only to the case law "as of the time of the relevant state-court decision." *Id.* at 1523. Critically, the section 2254 inquiry is not a direct review substitute, and "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 131 S. Ct. at 785 (quoting *Williams*, 120 S. Ct. at 1498) (emphasis in original). Ultimately, federal courts can provide no relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004)); *accord Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) ("[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."). Against the required deferential backdrop, the Court proceeds to the merits.

### 3. Analysis

Sparks argues, both in the petition and in his objections to the R&R, that the trial court and Kentucky Supreme Court treatments violated his Fifth and Sixth Amendment rights. Judge Atkins concluded that the Kentucky Supreme Court's resolution of these claims was neither contrary to established federal law nor an unreasonable application of such. Sparks properly objected to both R&R conclusions. The Court thus addresses each set of constitutional arguments in turn.

*Fifth Amendment Claims*

The Court has audited the complete interview tape. At the outset of the interview, Sparks began to speak unprompted, and Detective Armstrong paused the conversation to read Sparks his *Miranda*[5] rights. *See* DE #1-3 at 4. Sparks insisted that he knew and understood his rights. *Id.* The audio and state court record demonstrate that Armstrong's recitation was accurate:

> **Sparks:** I told them . . .
> **Armstrong:** Before you go too far . . . let me . . .
> **Sparks:** I understand my rights.
> **Armstrong:** Well let me tell you, tell you what they are just to make sure.
> **Sparks:** Okay.
> **Armstrong:** You've heard them before, I guess.
> **Sparks:** I've got the right to remain silent, anything can and will be used against me in a court of law.
> **Armstrong:** So you, so you've got the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. You have the right to have that attorney present during any questioning. If you can't afford an attorney, one will be appointed to you by the Court. You have the right to not answer any questions or make any statements if you want to do that. You understand those rights?
> **Sparks:** Yes, sir.

---

[5] *Miranda v. Arizona*, 86 S. Ct. 1602 (1966). The so-called *Miranda* rights become necessary when in-custody questioning occurs. *See id.* at 1612 (observing the warnings' applicability when an individual is "in custody or otherwise deprived of his freedom of action in any significant way"). The parties, and the Kentucky Supreme Court, have consistently operated under the assumption that Sparks was in custody during Armstrong's interview. Absent any dispute on the issue, the Court accepts Sparks's unchallenged custodial status.

*Id.* at 4–5.[6] The Kentucky Supreme Court found "[i]t [wa]s apparent that Sparks heard and understood his rights." *Id.* at 5. Judge Atkins too found the *Miranda* recitation sufficient, further noting that "[t]here is no argument in this case that Sparks was [not] properly advised of his Fifth Amendment right to remain silent and to refuse to answer any of Detective Armstrong's questions." *Id.* at 7.

Sparks, though, objects to the R&R's conclusion that Armstrong properly advised him of his right to remain silent under *Miranda*. In support, he claims only that Armstrong also should have advised him of the right to discontinue questioning at any point during the interview. DE #10-1 at 1 (complaining of "[t]he fact that the Defendant was not advised that he could stop the questioning at any time was omitted[]"). Sparks's claim in this regard is legally baseless. Moreover, he did not fairly present it to the Kentucky Supreme Court (nor does he legitimately develop it here). The objection decidedly fails, on these independent, alternative bases.

Though Sparks off-handedly challenged *Miranda* recitation completeness in his brief before the Kentucky Supreme Court, he substantively advanced no argument that he misunderstood or was misinformed of the applicable rights. *See* DE #6-2 at 32 (observing that Armstrong's *Miranda* warning "omitted" his right to cut off questioning and claiming that "this omission became consequential as the interrogation of Dustin unfolded and Dustin clumsily and drunkenly attempted to cease being questioned[,]" and then proceeding to argue only that Sparks

---

[6] Respondent conventionally filed video of the entire trial. DE ##7, 8. Part of this contains the full audio of Sparks's interview with Armstrong (there is no accompanying footage of the interview itself—only of the still courtroom while the audio played for the jury). Sparks does not challenge the Kentucky Supreme Court's factual findings concerning the audio content. Still, the Court has fully reviewed the portion of video containing Petitioner's interview with Armstrong and notes accuracy of the transcriptions (including designation of inaudible portions of the recording) as reflected in the Kentucky Supreme Court's opinion. *See* DE #8, File No. 2017-02-28_10.59.36.828. The Court treats the Supreme Court's handling as factfinding (subject to §§ 2254(d)(2) and (e)(1) deference) relative to transcript accuracy and completeness.

effectively invoked his right to silence during questioning); *but see id.* at 38 (contradictorily stating that "Dustin was informed of his *Miranda* rights before the interrogation" while arguing that Armstrong ignored Sparks's invocation of his right to silence during questioning). Sparks has failed to exhaust any claim that the *Miranda* warnings were inadequate; this Court thus lacks jurisdiction to consider it on habeas review. *See Fulcher*, 444 F.3d at 798 ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts. A claim may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claim in state court.").[7]

In any event, any claimed *Miranda* warning insufficiency in this case is without legal support. As the Kentucky Supreme Court observed, the warnings Sparks received were accurate and complete. *See Miranda*, 86 S. Ct. at 1612 ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). "The four warnings *Miranda* requires"—*i.e.*, (1) that the individual may remain silent, (2) that statements made can be used against him, (3) that he has the right to an attorney's presence, and (4) that he will receive an appointed attorney if needed—"are invariable, but [the Supreme] Court has not dictated the words in which the essential information must be conveyed." *Fla. v. Powell*, 130 S. Ct. 1195, 1204 (2010). "The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*." *Id.* (internal quotation marks

---

[7] Consistent with his cursory reference to the issue before the Kentucky Supreme Court, Sparks unfolds no argument based on *Miranda* warning invalidity in his § 2254 petition. He provides no argument or law as to warning content *Cf. Treesh v. Bagley*, 612 F.3d 424, 434 (6th Cir. 2010) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (citation omitted)) (concluding that, where the habeas petitioner "cite[d] no case law in support of his argument[]" and refenced it only "in a perfunctory manner, unaccompanied by [ ] effort at developed argumentation[,]" he "ha[d] not developed a legal argument" on the issue and thus forfeited its review).

and citation omitted) (alteration in original). The warnings Sparks received precisely tracked the four *Miranda* components and unquestionably conveyed his rights to remain silent and refuse questioning. Indeed, Sparks expressly admitted that he well knew he had the right to remain silent. DE #1-3 at 4–5. Petitioner offers no contrary arguments, and he cites no case requiring the warning formulation he espouses. *See* DE #1-1 at 11–12. Accordingly, even if Sparks had exhausted a claim of *Miranda* warning incompleteness and developed it here (he did neither), he could not demonstrate constitutional error in warning content.

The Court thus turns to Sparks's central Fifth Amendment argument. Petitioner contends that the Kentucky Supreme Court incorrectly applied federal law in deciding that none of six specific statements he made to Armstrong during the interview invoked his right to remain silent and to discontinue questioning.[8] "Once [*Miranda*] warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Michigan v. Mosley*, 96 S. Ct. 321, 325 (1975) (quoting *Miranda*, 86 S. Ct. at 1627). An individual's assertion of the right to silence—upon which questioning must stop—need not be formal or include magic words. "[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-

---

[8] There is indisputably a period of time (nearly ten minutes), after the *Miranda* warnings but before Sparks uttered the first statement allegedly invoking his right to silence, when Sparks willingly answered Armstrong's questions. As Armstrong had already delivered *Miranda* warnings (and those warnings were adequate, for the reasons discussed), Sparks's decision to nevertheless continue speaking with Armstrong and volunteer information was a valid waiver of his right to silence under the circumstances. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."). As noted, Sparks does not develop any invalid-waiver theory, or otherwise meaningfully assail the Kentucky Supreme Court's implicit conclusion that he validly waived his right to silence *at least* until he uttered the first of the six at-issue potential triggering statements.

incrimination[.]" *Emspak v. United States*, 75 S. Ct. 687, 690 (1955). However, an individual's statement must be "an unambiguous invocation of" the right to silence in order to trigger the Fifth Amendment privilege and require halt of the interrogation. *Berghuis*, 130 S. Ct. at 2260 (discussing *Davis v. United States*, 114 S. Ct. 2350 (1994), and the requirement that a suspect unequivocally assert his right to counsel to properly invoke it). The inquiry is an objective one. *Id.* Critically, "the admissibility of statements obtained *after* the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Mosley*, 96 S. Ct. at 326 (citation omitted) (emphasis added).

However, even where an individual has invoked the right to silence, he may validly waive it (as, alternatively, an individual may properly invoke the right to silence even after waiving it). "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent[.]" *North Carolina v. Butler*, 99 S. Ct. 1755, 1759 (1979). Where an "individual [ ], with a full understanding of his or her rights, acts in a manner inconsistent with their exercise," he "has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 130 S. Ct. at 2262. At bottom, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 106 S. Ct. 1135, 1141 (1986). Additionally, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (internal quotation marks and citation omitted). Accordingly, "[i]f the State

establishes that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver." *Berghuis*, 130 S. Ct. at 2254.

The Kentucky Supreme Court correctly identified these foundational governing federal law principles. *See* DE #1-3 at 4 (citing *Mosley* and *Davis* and noting that questioning must cease upon an accused's invocation of the right to silence, that the invocation need not be formal, and that the invocation must be unambiguous); *id.* at 8 (observing that the invocation inquiry is an objective one); *id.* (stating that an individual can waive his *Miranda* rights, but the waiver must be uncoerced and made with full knowledge of the rights relinquished); *id.* at 8–9 (noting that an individual may impliedly waive a *Miranda* right via conduct inconsistent with exercise of that right and courts evaluate the totality of the circumstances in assessing waiver). Applying the apt law, the Kentucky Supreme Court found that none of the six statements Sparks cited required halting of the interrogation and suppression of subsequent statements. The Court thus considers each statement, bearing in mind the key habeas inquiry: whether the Kentucky Supreme Court acted contrary to or unreasonably applied federal law in reaching its conclusions on the invocation issue.

### Statement #1[9]

> **Sparks:** If I had a bottle in my hand and punched him and he told you I hit him with a bottle?
> **Armstrong:** So, instead, it was better to slice his throat?
> **Sparks:** No, I didn't slice his throat, man. I just fucking. I just took my shit. I was fucking defending myself, that's all **I'm gonna say. [Inaudible]**.[10]

---

[9] Again, the Supreme Court took Sparks's tendered transcript and made findings relative to the actual tape. Those are factual conclusions, entitled to deference and a presumption of correctness. Sparks does not confront the findings but instead persists in his view of the transcript. Such an approach ignores the requirements of § 2254(d)(2) and (e)(1); the Court sees no argument contrary to the Kentucky findings (and the findings are not unreasonable or clearly wrong) and so treats them as established. The high court bolded in text where it disagreed with the transcript.

[10] The Kentucky Supreme Court found the bolded portion of the statement to be essentially inaudible on the recording. Sparks does not challenge that finding, and the Court independently agrees.

DE #1-3 at 5. The Kentucky Supreme Court concluded that the last phrase was not audible and that "Sparks's inaudible mumbling was not an invocation of his right to remain silent." *Id.* The Court cannot conclude that the state court's determination unreasonably applied the "unambiguous statement" standard. Where an individual trails off into unintelligible muttering at the end of a sentence (as here), it is reasonable to characterize the assertion as, at best, equivocal in an objective sense. Indeed, in the context of Sparks's full sentence, it is more likely that Petitioner's utterance simply exhibited frustration at repeating, ten-plus minutes in, his self-defense theory to an unreceptive Armstrong. Whatever he said, the words did not, though, unequivocally assert a right to remain silent.

The Kentucky Supreme Court similarly found that Statement 5, also partially inaudible, failed to unambiguously assert the right to silence:

### Statement #5

**Armstrong:** All the fights you've been in, the only reason you didn't stab [inaudible] is because you didn't have a knife?
**Sparks:** Yes, sir.
**Armstrong:** Well it's a wonder you ain't been in prison for a while.
**Sparks: [Inaudible] fucking talking to you. I'm not gonna sit here and talk to you.** I'm trying to be civil about the situation, dude.
**Armstrong:** What's civil about cutting somebody's throat wide open?

DE #1-3 at 6. Again, the Kentucky Supreme Court rejected full-sentence accuracy and found no invocation. The factual determination (that part is "actually inaudible") is unimpeached. If Sparks indeed said (or intended to say) "I'm not gonna sit here and talk to you[,]" the muffled, indistinct delivery renders the statement itself and its meaning largely unclear. At minimum, the Kentucky Supreme Court's decision that a reasonable officer would not have understood it as invocation of Sparks's right to silence is not unreasonable. Further—also like Statement 1—this sentence, in context of Sparks's full utterance, more likely indicates vexation with Armstrong's demeanor than

an intent to stop the interrogation. *See Bird v. Brigano*, 295 F. App'x 36, 38 (6th Cir. 2008) ("Bird argues that his standing up, especially when coupled with his later statement that he was 'done talking about it,' could be viewed as an invocation of his right to silence. And taken in isolation, out of context, that is not an unreasonable conclusion. But context matters . . . As the district court observed, this could reasonably be interpreted as simply an act of frustration, not an attempt to end the interview."); *cf. McGraw v. Holland*, 257 F.3d 513, 517–18 (6th Cir. 2001) (granting habeas relief where the petitioner repeated eight or nine times that she "didn't want to talk about it"). Both Statement 1 and Statement 5 were significantly inaudible and, based on an objective contextual interpretation, ostensibly indicated only frustration with Armstrong's disbelieving and somewhat derisive response to Sparks's story, not plain intent to end the conversation. Statements 1 and 5 indeed are unintelligible at key points; this substantiates the court's rejection of the right invocation. The Kentucky Supreme Court did not unreasonably determine that neither constituted an unambiguous invocation of the right to silence, per the applicable federal standards.

The Kentucky Supreme Court analyzed Statements 2 through 4 collectively; the Court thus jointly addresses them and that court's treatment:[11]

### Statement #2[12]

> **Armstrong:** Cause he wasn't, he didn't have his hands around your neck.
> **Sparks:** How, I . . . it could have happened, just . . .
> **Armstrong:** But it didn't.
> **Sparks:** I.
> **Armstrong:** Did he.
> **Sparks: I'm not gonna say another fucking word, man. This is bullshit. [Inaudible.]**

---

[11] Per the audio, there is a gap between Statements 2, 3, and 4. About 1 minute elapses between Statements 2 and 3, and 7 minutes elapse between Statements 3 and 4. The Court might not read each of those exactly the same way as the state court, but the unanimous handling of the Supreme Court surely was reasonable and justified on the record, for the reasons discussed.

[12] The Court notes that by that point, approximately 13 minutes into the interview, Sparks had already told his tale of self-defense, including a full recounting of the fatal interaction with Brewer.

**Armstrong:** Well, I'm just asking you, did he or did he not choke you?

### Statement #3

**Armstrong:** Here's what I'm asking you ...
**Sparks: I mean when are ya'll gonna stop man?**
**Armstrong:** Can I ask you a question?
**Sparks:** Yes, sir.

### Statement #4

**Sparks:** I am fucking scared of somebody that's fucking [inaudible]. It didn't happen any fucking time . . .
**Armstrong:** He never even presented a threat to you at all.
**Sparks:** Nah, I used to know Ben.
**Armstrong:** Right.
**Sparks:** If somebody's walking up and just starts fucking . . . fucking throwing punches and hitting me, man, shit yeah, I'm fucking going to defend myself. **That's all I've got to say.** I'm defending myself.
**Armstrong:** Okay. So, I guess we're just on different sides in the way we interpret defending ourselves.

DE #1-3 at 6-7. The Kentucky Supreme Court's discussion of Statements 2 and 4 blends, to a degree, the invocation and waiver analyses.[13] The Supreme Court concedes appeal in the Commonwealth's argument that—as these exchanges took place in the context of Sparks's earnest,

---

[13] Whether an individual validly waives the right to silence and whether he properly invoked the right at any point are distinct legal questions. *See Smith*, 105 S. Ct. at 494 (emphasizing, in the right-to-counsel context, that "[i]nvocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together"). That the two issues are at times temporally and analytically tied—because, for example, an individual can invoke and then immediately waive his right to silence, via a clear right assertion followed by voluntary conduct inconsistent with exercise of that right (effecting, in practical terms, the same outcome as a failure to properly invoke the right at all)—does not collapse the distinction. In this case, waiver becomes relevant, to an extent, insofar as Sparks defeats any even arguable invocation in Statements 2 and 4 via the conduct that immediately follows. The Kentucky Supreme Court's analysis at times blurs the line between the invocation and waiver inquiries. *See, e.g.*, DE #1-3 at 8–9 (discussing, technically, whether Sparks waived any right to silence he may have invoked by immediately volunteering additional information, but characterizing the entire inquiry as a question of whether Sparks invoked his right to silence). Despite the lack of linguistic nuance, the Kentucky Supreme Court identified the apt legal principles and reasonably applied them in reaching its result, as discussed in more detail *infra*.

sometimes heated attempts to convince Armstrong that he was defending himself—Statements 2 and 4 likely indicate Sparks's irritation with Armstrong's disbelief rather than an intent to invoke the right to silence. Yet, the court ultimately concluded that it "need not adopt that position to find that Sparks did not invoke his right to remain silent." *Id.* at 8. The court then analyzed under the correct waiver standard the fact that Sparks, after each statement, continued to speak voluntarily with Armstrong.

The discussion of Statements 2 and 4 lacks ideal analytical precision. Nonetheless, the Kentucky Supreme Court's resolution of the question as applied to both statements is, at minimum, a reasonable application of the governing federal standards. The court accurately recognized that Sparks was fully aware of his right to remain silent; it further noted, correctly, that Sparks could thus relinquish his right to silence via conduct inconsistent with the exercise of that known right, regardless of prior invocation. As the court found, following Statement 2, Sparks instantly continued to voluntarily speak to Armstrong (albeit unintelligibly, per the recording, as the "inaudible" designation reflects in the transcript) *before* Armstrong again spoke or questioned him. Such volunteering of added information is inconsistent with an intent to exercise Sparks's right to remain silent, even *if* properly invoked only a moment before. Talking is not silence. Likewise, in Statement 4, Sparks explicitly reiterated his version of events—that he was acting in self-defense—immediately after allegedly invoking his right to remain silent. Accordingly, even assuming that Sparks's invocation of the right to silence in Statements 2 and 4 were sufficiently unequivocal, he immediately proceeded to relinquish whatever right he had invoked through inconsistent, uncoerced conduct, despite full knowledge of the right's existence. *See Berghuis*, 130 S. Ct. at 2262; *see also Tolliver v. Sheets*, 594 F.3d 900, 919 (6th Cir.2010) ("[E]ven if he did invoke his right to remain silent with these two statements, he immediately (and without police

prompting) volunteered additional information. He cannot have it both ways: if he wanted to invoke his right to remain silent, he then needed to remain silent.") Though Sparks's subsequent statements do not necessarily cast doubt on the clarity of the alleged invocation itself, *cf. Smith v. Illinois*, 105 S. Ct. 490, 495 (1984) (holding that "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request [for counsel] itself[]"), the Kentucky Supreme Court was not unreasonable in concluding that Sparks's course of conduct operated as a deliberate relinquishment of any right invoked. Sparks immediately vacillated between a suggestion of silence and further elaboration. Certainly, Statement 4 arguably was merely rhetorical—Sparks trying to slam the door on the need for further justification, the equivalent of saying "case closed." However parsed, Kentucky's high court reasonably viewed Sparks as giving up any protection he otherwise asserted.

As to Statement 3, the Kentucky Supreme Court simply found that it—a temporal question—was insufficient to clearly invoke Sparks's Fifth Amendment privilege. Courts routinely hold, as the Kentucky court found, that questions are inadequately unambiguous invocations of constitutional rights under federal Supreme Court law. *See, e.g.*, *United States v. Delaney*, 443 F. App'x 122, 130 (6th Cir. 2011) (relying on *Davis*, 114 S. Ct. 2350, and concluding that "I think I should talk to a lawyer, what do you think?" was not an unambiguous assertion of the right to counsel); *Cornelison v. Motley*, 395 F. App'x 268, 274 (6th Cir. 2010) (also discussing *Davis* and finding "What if I want my lawyer present first?" to be an insufficiently unequivocal assertion of the right to counsel); *see also United States v. Bell*, No. 1:18-CR-00026-GNS, 2019 WL 4276997, at *4 (W.D. Ky. Sept. 10, 2019) (collecting "numerous other cases dealing with this very fact-specific issue"). Notably, Sparks's question—"I mean, when are ya'll gonna stop, man?"—is even less clearly referring to any constitutional protection than the questions in *Delaney*

and *Cornelison*. Accordingly, the Kentucky Supreme Court did not incorrectly or unreasonably apply federal Supreme Court law in deciding that Statement 3 was not a clear invocation of Sparks's right to silence.

Lastly, the Court considers Statement 6:

### Statement #6

**Armstrong:** How long were you out when you blacked out?
**Sparks: I'm not talking to you.** I know how you all work.
**Armstrong:** Like a minute or two minutes?

DE #1-3 at 9–10. As the Kentucky Supreme Court found, this statement is the closest of the six to an unambiguous assertion of the Fifth Amendment privilege. *Cf. Berghuis*, 130 S. Ct. at 2260 (noting that an individual stating he "d[oes] not want to talk with the police" is sufficiently unambiguous). Though, again, in context Sparks's statement seemingly demonstrates something closer to aggravation with Armstrong's efforts to challenge his perception of events than a desire to cut off questioning, the phrasing itself is unambiguous and, perhaps, sufficient. And, it is apparent that Armstrong did not cease questioning in response, as the transcript indicates.[14]

However, the Kentucky Supreme Court found that any constitutional error stemming from admission of Sparks's post-Statement-6 interview was harmless beyond a reasonable doubt. The court correctly applied, given its direct review posture, the standard outlined in *Chapman v. California*: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 87 S. Ct. 824, 828 (1967). On direct harmlessness review, the state bears the burden of demonstrating, beyond a reasonable

---

[14] The Supreme Court seemed to treat Sparks's continuation as again undercutting invocation; still, it then engaged the prejudice analysis. The Court notes that Sparks blurted out the words in and surrounding Statement 6 in a pauseless stream. He indeed went straight from saying he was not talking to further talking. Nonetheless, the Court too finds the prejudice question dispositive and follows that path.

doubt, that the error did not contribute to the verdict. *Id.* at 829. The Kentucky Supreme Court thus, based on *Chapman*, found

> the admission of anything beyond [Statement 6] harmless beyond a reasonable doubt. By the time of the making of Statement 6, Sparks had already admitted to stabbing Brewer and adamantly claimed he was acting in self-defense. He had already stated that he would do anything he had to do to defend himself. The Court cannot say the admission of the remainder of the interrogation contributed to the verdict.

DE #1-3 at 11.

This Court's habeas task is a slightly different one, though, than the Kentucky Supreme Court faced in assessing harmlessness. On collateral review of the issue, the Court must apply the principles outlined in *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721– 22 (1993). Under *Brecht*, to merit § 2254 relief based on a trial error, the petitioner must demonstrate "actual prejudice" stemming from such. *Id.* at 1722. The test for "actual prejudice" is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Kotteakos v. United States*, 66 S. Ct. 1239, 1253 (1946)). The Sixth Circuit recently confirmed that, in this Circuit, a § 2254 court's role is not to apply the AEDPA "contrary to" / "clearly unreasonable" lens to the *Chapman* question; instead, the habeas harmlessness inquiry simply proceeds under *Brecht* (and need not separately apply the *Chapman*/AEDPA analysis). *See Reiner v. Woods*, No. 18-1413, 2020 WL 1684063, at *6 (6th Cir. Apr. 7, 2020) (quoting *O'Neal v. Balcarcel*, 933 F.3d 618, 625 (6th Cir. 2019)) ("This court recently held that '. . . in the Sixth Circuit on habeas review we always apply *Brecht* and need not also apply AEDPA/*Chapman*.'"). The "actual prejudice" standard is met only if the habeas court has at least "grave doubt" as to whether the trial court's error had a substantial and injurious effect or influence on the verdict. *O'Neal v. McAninch*, 115 S. Ct. 992, 994 (1995). At bottom, the Court simply considers whether, in its view, the error had the requisite negative effect or influence. *See id.* at 995 ("[W]e think it

conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to put the same question in terms of proof burdens[.]").

Consistent with the Kentucky Supreme Court result here, the Court has no, and certainly not grave, doubt on this issue. The Kentucky Supreme Court's factual finding that Sparks adds nothing new or separately inculpatory after Statement 6 accurately represents the record; Sparks does not present contrary evidence or argument, and the finding is neither unreasonable nor wrong. Indeed, the audio recording confirms its accuracy. After Statement 6, Sparks simply reiterates his well-worn self-defense theory and, for the last nearly 20 minutes of the interview, sits in near silence as Armstrong records personal statistical data. By this point in the audio, all inculpatory admissions had occurred. The remainder of the interview was cumulative, at most. Given the utter lack of new information elicited in the interview portion following Statement 6, admission of Sparks's post-Statement-6 remarks could not have had a substantial effect or influence on the verdict, injurious or otherwise. Thus, under *Brecht*, it undoubtedly caused no actual prejudice and justifies no habeas relief.[15]

Applying the deferential factual and legal review required, this Court sees no basis for upsetting the Commonwealth's treatment. Per Kentucky's reasonable assessment, applying the correct federal standards, Sparks knew well his rights, and he did not unequivocally invoke the right to silence. The Kentucky court carefully scrutinized the interview and the tendered transcript,

---

[15] Though the Court does not separately analyze the issue under the *Chapman*/AEDPA framework, it notes that these same considerations—namely, the clear absence of any new incriminating information following Statement 6, per the record—would provide the answer there, too. The Supreme Court fairly concluded that the admission of the interview remainder had no impact on the verdict. The Kentucky Supreme Court's harmlessness determination, beyond a reasonable doubt, reasonably applied the apt *Chapman* standard to the facts as accurately found.

making factual determinations key to the result—those get clear deference, as well. Ultimately, Kentucky, in a reasonable evaluation, rejected the rights invocation, or found it waived where asserted, or found no harm as to the lone arguable invocation, Statement 6. For all of the reasons discussed, Petitioner's Fifth Amendment claims thus earn him no relief.

*Sixth Amendment Claim*

Sparks challenges the trial court's restriction of his cross-examination of Armstrong. Defense counsel began questioning Armstrong about misstatements the detective made concerning the law of self-defense in Kentucky during his interview of Sparks; the trial court precluded the line of questioning. The Kentucky Supreme Court succinctly summarized the relevant events:

> Sparks's counsel, during cross-examination, asked Armstrong: "You heard me tell the jury that the law of self-defense is basically that you have the right to use deadly force against someone intending to kill you, or someone who may cause you serious bodily injury. Now when you questioned Mr. Sparks on the tape you weren't exactly accurate in trying to explain to him your version of the law were you?" The judge subsequently said, "That'll be a question of law for the court. I don't want you to tell the jury what the law in self-defense is. You can argue what self-defense is but as far as giving them enough to making it self-defense you can't, sounds like that's what you're up to." The trial judge then offered to admonish the jury to not consider Detective Armstrong's summary of the law of self-defense, and Sparks's counsel agreed. The trial judge admonished the jury to disregard any statements made by Detective Armstrong to Sparks regarding the Kentucky law of self-protection.

DE #1-3 at 12. The Kentucky Supreme Court concluded that the trial court did not abuse its discretion in limiting the cross-examination of Armstrong, and that any potential harm from Armstrong's misstatement of the law was cured by the court's immediate admonition. The court also correctly instructed on the substantive law.

Petitioner's challenge is twofold. First, he argues that Armstrong's misstatements influenced the jury's perception of the applicable law, despite the contrary admonition. *See, e.g.*, DE #10-1 at 4 ("A jury might naturally expect and trust a state police detective to accurately define

self defense."). The Kentucky Supreme Court directly confronted and rejected this argument: "It has long been the law in Kentucky that an admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it." *Price v. Commonwealth*, 59 S.W.3d 878, 881 (Ky. 2001) (citing *Knuckles v. Commonwealth*, 261 S.W.2d 667, 671 (Ky. 1953)). Kentucky law—as the Kentucky Supreme Court described it—is in accord with federal law on this topic. *See, e.g.*, *Greer v. Miller*, 107 S. Ct. 3102, 3109 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant[.]") (internal citations omitted); *United States v. Farber*, 336 F.2d 586, 589 (6th Cir. 1964) ("The general rule is that where evidence is erroneously admitted the subsequent striking of it from the case, accompanied by a clear and positive instruction to the jury to disregard the evidence, cures the error. But if the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted.") (quotation marks and citation omitted). Nor did the Kentucky Supreme Court unreasonably apply the governing law, under the circumstances. Armstrong made two brief, isolated statements concerning the law of self-defense during the course of the more than 50-minute recorded interview. And Sparks does not challenge, as a factual matter, that the trial court promptly directed the jury to disregard those statements. Further, there is no dispute that the trial court correctly instructed the jury regarding the law of self-defense in its final instructions. It thus does not appear, in context, that the effect of Armstrong's two misstatements was so prejudicial as to render the court's contrary admonitions—both mid-trial and during final instructions—an

ineffective cure. Sparks has not carried his burden of demonstrating that the Kentucky Supreme Court's resolution of this issue is contrary to or unreasonably applies federal Supreme Court law.

Second, Petitioner contends that his Sixth Amendment confrontation right was infringed because the trial court blocked him from probing potential bias in Armstrong's role and testimony. The Supreme Court has "recognized that the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 94 S. Ct. 1105, 1110 (1974). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 106 S. Ct. 1431, 1435 (1986).

The Kentucky Supreme Court concluded, given the presumptively effective curative instructions, that the trial court did not abuse its discretion in limiting Sparks's cross-examination of Armstrong. Though Sparks insists that the trial court and Kentucky Supreme Court violated the Sixth Amendment by preventing him from exploring potential witness bias, he does not clearly articulate how inability to examine Armstrong about the legal misstatements actually impaired his defense. That is, Sparks uses words like motivation and bias, but he does not articulate how the elided cross affected his pursuit of those topics.

The Court makes several points. First, Kentucky properly found that the admonition and jury instructions cured any impact from Armstrong's misstatements of law. The jury well knew the law and who spoke and did not speak with authority on legal definitions. The Kentucky Supreme Court treated Armstrong's two references as innocuous, a reasonable conclusion on the full record.

Second, the high court did not expressly engage in the federal analysis,[16] but the state cases cited and relied on feature the federal standard. *Compare, e.g., Price*, 59 S.W.3d at 881, *with Greer*, 107 S. Ct. at 3109 n.8; *see Davenport v. Com.*, 177 S.W.3d 763, 769 (Ky. 2005) (expressly applying *Van Arsdall* on the bias exploration topic and finding that "[t]he trial court does not err in limiting evidence of potential bias when there is a lack of credible evidence supporting the inference[]"). The trial court perceived counsel as trying to engage a legal debate with the lay witness. That is just what the lawyer claimed he wanted to do. *See* DE 6-2 at 43 (quoting record as "I just want to challenge what he said on the tape . . . that he didn't [ ] represent the law."). With the court's clear admonition and the proper instructions given, the defense actually had the full argument available to it. Thus, the defense could have noted Armstrong's incomplete definition and pointed out inferences from Armstrong's strategy. The trial court properly cabined the cross-examination on a purely legal point, and the record still allowed Sparks to make the inroads he sought about the interview.

Kentucky saw no error in the trial court's treatment. That decision was reasonable, reflected proper standards ultimately rooted in federal law, and is not vulnerable on habeas review. The trial

---

[16] The Kentucky court cited state cases (consistent with federal ones) on the issue of whether the jury misunderstood the self-defense law. The court did not separately engage in analysis on the bias exploration argument. Still, the ultimate result reached was that the trial court did not impinge on Sparks's Sixth Amendment right by limiting the cross. As explained, the Kentucky cases cited in turn applied the correct federal standards, and, most critically, the Kentucky Supreme Court's decisional outcome was correct under the apt law. *See, e.g., Holland v. Rivard*, 800 F.3d 224, 235–36 (6th Cir. 2015) (quoting *Robinson v. Polk*, 438 F.3d 350, 358 (4th Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original)) ("In assessing the reasonableness of the state court's application of federal law, ... federal courts are to review the *result* that the state court reached, not whether [its decision] [was] well reasoned."); *id.* at 236 (discussing *Richter*, 131 S. Ct. 770) ("The Supreme Court . . . recently underscored that AEDPA deference applies to the state court's *decision*, not its reasoning[.]") (emphasis in original).

court gave Sparks free rein on cross, other than in this narrow category. Sparks retained the ability to criticize Armstrong's method, including that Armstrong had the law wrong. He also could have argued bias or motivation, although the particulars of that theory are lacking and thus speculative.

Finally, Sparks did not argue a prejudice case, as to the bias or motivation theory, before the Kentucky court or here. The Court sees nothing in the circumscription of cross (which only, properly, kept a lawyer-witness debate about law from before the fact-finder) that would have affected or influenced the verdict.[17] Sparks has not justified relief.

### 4. Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Petitioner has not made a "substantial showing" as to any claimed denial of Fifth or Sixth Amendment rights; his claims (as viewed through the analysis required) conclusively fail to clear the high AEDPA bar. For the reasons thoroughly discussed, reasonable jurists would

---

[17]In the Court's confident view, two incomplete descriptions of self-defense law, cured by the judge, that were part of a 50+ minute interview had no impact on the properly instructed jury's verdict. *See Brecht*, 113 S. Ct. at 1722 (quoting *Kotteakos*, 66 S. Ct. at 1253) (evaluating whether the trial error "had substantial and injurious effect or influence in determining the jury's verdict[]"). The record included physical evidence, multiple eyewitnesses, and the jury faced with resolving a stark question on the issue of self-defense under Kentucky law.

not debate the absence of habeas relief availability under the circumstances of this case. The Court thus denies a Certificate of Appealability.

### 5. Conclusion

The Court, per the distinct analyses here outlined, ultimately agrees with the R&R's conclusions (though, in some instances, for slightly different reasons) and **DENIES** Sparks's claims for habeas relief. Accordingly, the Court **ADOPTS** DE #9—to the extent it recommends relief denial—but substitutes its independent analysis, as reflected in this Opinion. A corresponding Judgment dismissing Sparks's petition follows.

This the 9th day of April, 2020.

Signed By:

_Robert E. Wier_

**United States District Judge**